## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

JOHN EARL JORDAN, JR.
REG. #07438-043                                        PETITIONER


VS.                          2:11CV00098 JLH/JTR


T.C. OUTLAW, Warden,
FCI, Forrest City, Arkansas                            RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District

Judge J. Leon Holmes.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or

legal basis for the objection.  If the objection is to a factual finding, specifically

identify that finding and the evidence that supports your objection.  An original and

one copy of your objections must be received in the office of the United States District

Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file

timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.   An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A 149
Little Rock, AR 72201-3325

## I.  Background

Pending before the Court is a § 2241 habeas Petition filed by Petitioner, John

Earl Jordan, Jr.[1]  (Docket entry #1)  Respondent has filed a Response (docket entry #8), to which Petitioner has filed a Reply (docket entry #10).  Thus, the issues are joined and ready for disposition.

Before addressing the merits of Petitioner's claims, the Court will review the relevant procedural history of this case, which arises from Petitioner receiving a disciplinary conviction on February 2, 2011, and losing seven days of good-time credit.  At the time Petitioner received this disciplinary, he was incarcerated in FCI, Forrest City, Arkansas.

According to Petitioner, on June 10, 2009, the BOP wrongfully withdrew $133.00 from his inmate trust account, without first having him sign an Inmate Financial Responsibility Program ("IFRP") contract, as required by BOP Program Statement 5380.08.[2]   On September 16, 2009, Petitioner alleges that his BOP

---

[1]Petitioner is serving a 114-month sentence for bank robbery.  The sentence was imposed in the Southern District of Mississippi.  *See United States v. Jordan*, S.D. Miss. No. 1:06CR00002.

[2]In 2009, Petitioner filed a § 2241  habeas action challenging the BOP's allegedly wrongful withdrawal of these funds.  *See Jordan v. Outlaw*, E.D. Ark. No. 2:09CV00092 BRW/JJV.  United States District Judge Billy Roy Wilson adopted the Recommended Disposition of United States Magistrate Judge Joe J. Volpe and found that the BOP lawfully withdrew the funds.  Thus, the Court denied Petitioner's habeas claim. *See id.* at docket entries # 22 and #33. On appeal, the Eighth Circuit Court of Appeals affirmed.  *See Jordan v. Outlaw*, 393 Fed. Appx. 412 (8th Cir. Sep. 17, 2010) (unpublished *per curiam*).

All of the various actions by the BOP (from June 10, 2009, through February

counselor, "Mr. Brown," arbitrarily changed his bed assignment for refusing to sign the IFRP paperwork authorizing the $133.00 to be withdrawn from his trust account. (Docket entry #8-1 at 28). Petitioner refused to obey Mr. Brown's order to change his bed assignment, which resulted in Petitioner being moved from general population to the Special Housing Unit ("SHU"). (Docket entry #1 at 47). Later that day, he was charged with refusing to obey an order. On September 21, 2009, he was convicted of that disciplinary infraction. (Docket entry #8-1 at 2).

On September 22, 2009, Petitioner was released from the SHU. However, he refused to return to the general population unless he was placed in "protective custody" from Mr. Brown. (Docket entry #8-1 at 28). It appears this resulted in Petitioner remaining in the SHU.

According to an "Inmate Investigative Report," dated August 24, 2010, the BOP determined that there was no threat to Petitioner's safety, and that he must return to the general population. (Docket entry #8-1 at 29). The Report recommended that Petitioner be "ordered out of special housing and back to general population," and concluded that "if inmate Jordan refuses to return to General Population, he should receive an incident report for Refusing Programs." (Docket entry #8-1 at 29).

_____

2, 2011), which Petitioner is challenging in this case, took place while he was incarcerated in FCI, Forest City, Arkansas.

4

On November 17, 2010, Petitioner was charged with "refusing to accept a program assignment." (Docket entry #8-1 at 16-17). In the November 17, 2010 Incident Report, Senior Officer B. Hanks stated the following:

> On 11/17/10 I, Officer B. Hanks, was assigned to the post of SHU 1 at the low component. At approximately 3:30 PM I ordered [Petitioner] to return to general population at the low. [Petitioner] refused my order. He stated he would not return back to the compound.

(Docket entry #8-1 at 16). The Incident Report was delivered to Petitioner on November 18, 2010, at 3:10 p.m. (Docket entry #8-1 at 16).

On November 19, 2010, the Unit Disciplinary Committee ("UDC") met and referred the charge to a Disciplinary Hearing Officer ("DHO"). (Docket entry #8-1 at 16). On December 9, 2010, Petitioner appeared for his disciplinary hearing. (Docket entry #8-1 at 12). He waived his right to staff representation. (Docket entry #8-1 at 12). When asked if he wished to make a statement, he "deferred to the three hand written statements [he] provided at the UDC hearing." (Docket entry #8-1 at 12).

In one of Petitioner's statements, titled "Offer," he said he would "gladly return to the compound [general population] whenever you will produce to me the valid and active contract which allowed staff to legally take the $133.00 on 6-10-09." (Docket entry #8-1 at 19). In another document, titled "Statement of Facts," he wrote in part: "No, I will not return to general population at any Outlaw run facility - ever. But it

5

is for my own safety, and the order [to return to general population] is invalid as
such." (Docket entry #8-1 at 20).  In a third statement, Petitioner requested videotape
from the SHU hall camera that would establish that Officer B. Hanks "did not give me
a direct order to return to the compound."[3]  (Docket entry #8-1 at 18).

In the DHO's February 2, 2011 decision, he found that Petitioner committed the
offense of refusing to accept a program assignment:

> I find you committed the prohibited act of refusing to accept a program
> assignment, code 306, while incarcerated at FCC Forrest City, Arkansas.
> This finding is based in part on the written report of Officer Hanks, who
> states in summary, on November 17, 2010, at approximately 3:30 p.m.,
> he ordered you, [Petitioner], to return to general population.  You refused
> his order stating you would not return to the compound.

> I considered you had no statement for the investigating Lieutenant.  It is
> reasonable to believe an individual who was falsely accused of having
> committed a prohibited act would, at a minimum, make a statement
> denying the charges.  At your UDC hearing, you provided three hand
> written statements.  During the DHO hearing, you deferred to these
> statements.   Summarized, they indicate you would return to the
> compound if staff would produce IFRP documentation which allowed
> them to legally take $133.00 from your account.  You also claim the
> officer did not come to your cell and order you out as stated in the
> incident report.  You wanted the camera reviewed.

> As a follow up to the statements you provided to the UDC,
> documentation was received concerning the validity of your allegation
> regarding the IFRP documentation.  An investigation determined there

[3]In Petitioner's Brief in Support of his habeas Petition, he states that "I did
refuse to return to compound on 11-17-10, but much earlier than the claimed time of
3:30 p.m." (Docket entry #4 at 4).

was no validity to your claim. Further, contact with staff revealed there is no video of this incident, nor is it a requirement it be maintained. I find Officer Hank's account of this incident credible when he states he ordered you to return to the compound and you told him you would not. You indicate in your own statement you would not return to the compound until you were provided satisfactory IFRP documentation. You admission establishes your culpability. As previously stated, supporting documentation from staff confirms there is no verifiable reason you cannot be housed in general population.

(Docket entry #8-1 at 14).

The sanctions imposed by the DHO included: (1) disallowance of seven days of good conduct time; and (2) the loss of certain commissary, telephone, and visitation privileges. *Id.*

After pursuing an administrative appeal, Petitioner filed this federal habeas action on June 1, 2011.[4] (Docket entry #1.) According to Petitioner, the Court should vacate his disciplinary conviction based on the following alleged due process violations: (1) he was deprived of good-time credit based on an "invalid Incident Report;" (2) he was denied "mandatory discovery" prior to the DHO hearing; (3) the DHO hearing was invalid because "standard policy and procedure" were not followed; (4) his detention in the SHU was "an unlawful restraint without any verified cause;" and (5) the BOP unlawfully denied his attempts to administratively appeal "as part of

---

[4]Respondent does not dispute the fact that Petitioner has exhausted his administrative remedies.

a conspiracy against his civil rights."[5]  (Docket entry #1 at 6-13).

Respondent argues that Petitioner's claims either fail on the merits or are not cognizable in a § 2241 habeas action.  (Docket entry #8).

For the reasons explained below, the Court agrees with Respondent's arguments.  Thus, the Court recommends that the Petition for a Writ of Habeas Corpus be denied, and that the case be dismissed, with prejudice.

## II.  Discussion

The United States Supreme Court has held that a disciplinary conviction which results in a prisoner losing *good time credits* implicates a liberty interest protected by the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974).[6]

_____

[5]On December 7, 2011, Petitioner filed a change of address indicating that he has been transferred to a halfway house in New Orleans, and that he is scheduled to be released on April 11, 2012.  (Docket entry #11).  He requests that the Court retain jurisdiction over this case, and Respondent has filed no objection to the Court's continuing jurisdiction.

When the Petition was filed, Petitioner was incarcerated at FCI Forrest City. Thus, the Court has jurisdiction over this § 2241 habeas action. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004) (the proper respondent in a habeas action is the petitioner's "immediate custodian" at the time of filing). A habeas petitioner's post-filing transfer does not, in and of itself, defeat jurisdiction. *See Copley v. Keohane*, 150 F .3d 827, 830 (8th Cir.1998).

[6]The Court in *Wolff* also held that due process requires that an inmate, who is the subject of a disciplinary proceeding, must receive: (1) written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call

Because the loss of good time credits affects the duration of a prisoner's sentence, a § 2241 habeas action is a prisoner's exclusive remedy. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002).

In Petitioner's habeas papers, he does not develop any argument explaining how the disallowance of his good-time credits violated the minimum due process requirements of *Wolff* and *Hill*. Instead, all of his claims are premised on a convoluted argument that, following his placement in the SHU, the BOP was required to either grant him "protective custody" or give him a disciplinary transfer to another facility.[7] *See* docket entry #4 at 2-6. He readily admits that he refused direct orders to return to general population, but contends that the BOP somehow failed to timely investigate his complaints and properly document his continued detention in the SHU. *Id.* Petitioner calculates that the BOP had "cause" to hold him in the SHU until March 23,

_____

witnesses and present documentary evidence in his defense; and (3) a written statement from an impartial decision maker identifying the evidence relied on and the reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

Eleven years later, in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Court held that the decision of the prison DHO officer is only required to be supported by "some evidence in the record." Where the record contains some evidence to support the decision of the DHO, the decision cannot be characterized as arbitrary. *Id.* at 457.

[7]This argument does not rise to the level of constitutional dimension, which may explain why Petitioner fails to cite any legal authority to support his argument.

2010, but not thereafter.[8]  He goes on to claim that this allegedly unlawful detention invalidated the November 17, 2010 Incident Report and his December 9, 2010 disciplinary hearing.

The DHO's February 2, 2011 decision, which caused Petitioner to lose seven days of good-time credit, was supported by "some evidence in the record."  Under *Hill*, federal courts are required to defer to the judgment of prison officials as long "as some evidence in the record" supports the disciplinary conviction and the due process requirements of *Wolff* are satisfied.  This limited review does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of evidence. *Id.* at 455. Prison officials can permissibly rely on violation reports and hearsay to find inmates guilty of disciplinary infractions. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir.2008); *Moore v. Plaster*, 313 F.3d 442, 444 (8th Cir. 2002). Finally, the Eighth Circuit has held that, as long as the disciplinary proceeding is conducted by an impartial decision maker, a report from a correctional

---

[8]Petitioner fails to reconcile the BOP's alleged lack of "cause" to place him in the SHU with his admitted refusal to leave the SHU.

Insofar as Petitioner purports to challenge his placement in the SHU, that claim is not cognizable in a § 2241 habeas action. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) (constitutional claims that challenge the conditions of a prisoner's confinement "fall outside of [the] core" of habeas relief).  Rather, a federal prisoner may raise a challenge to his conditions of confinement in a civil rights action brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

officer constitutes "some evidence" upon which to base a disciplinary decision. *See Hartsfield,* 511 F.3d at 831.[9]

The record in this case clearly demonstrates that the disciplinary hearing satisfied the due process requirements of *Wolff* and that "some evidence in the record" supports the disciplinary conviction as required by *Hill.* Accordingly, Petitioner's due process claims are without merit.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for a Writ of Habeas Corpus (docket entry #1) be DENIED, and that the case be DISMISSED, WITH PREJUDICE.

Dated this 13th day of February, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9]The Court made it clear that such a report meets the "some evidence" standard even if the inmate disputes the facts in the report and the sole support for the DHO's decision is the report. *See Hartsfield,* 511 F.3d at 831.